FRIEDHEIM v. CRESCENT COTTON MILL.

1. INTEREST.—Circuit decree modified so as to allow creditor interest on his debt from date of amount agreed on to time of payment out of fund in Court.
2. RECEIVER—FEES OF ATTORNEY—TAXES.—Attorney's fee for representing receiver, taxes, commissions of receiver, and costs of Court officers, properly paid *pro rata* out of mortgaged property and proceeds of machinery on which manufacturer held purchase money mortgage.
3. BONDS.—Where the president of an insolvent cotton mill had deposited certain of its bonds with a bank to secure a mill loan, and afterwards the loan is paid in part by his individual funds, his claim that the bonds belonged to him as an individual is sustained,

although no account of the transaotion could be found on the books of the mill, and his assignment of the bonds to secure his individual debt upheld.

4. IBID.—EQUITY—EQUITABLE HOLDER.—He who pays to an institution money for which he is to have bonds at par secured by trust deed, and its officers hypothecate all bonds so issued to others, is an equitable holder of so much bonds, and any surplus of mortgaged assets after paying claims secured by hypothecated bonds is properly applied to this debt.

5. RECEIVER.—CLAIMS for running an insolvent cotton mill by receiver, under order of Court, are properly paid from proceeds of sale of goods so manufactured and funds not covered by special liens, to the exclusion of general unsecured creditors.

Before TOWNSEND, J., York, May, 1901.    Modified.

Action by Samuel Friedheim against Crescent Cotton Mill, W. B. Fewell, Richmond Trust and Safe Deposit Co., as trustee, and Saco & Pettie Machine Shops.    The following is the Circuit decree:

"On hearing the report of the receiver, A. E. Smith, bearing date of April 17th, 1901, and the report of W. Brown Wylie, special referee, upon the claims presented and proved before him, and after hearing the argument of counsel upon all matters of contest, it is hereby ordered, adjudged and decreed, that the report of the said A. E. Smith, receiver, be and the same is hereby in all respects confirmed, except as the same may be hereinafter modified.    And it appearing from the report of said special referee that there have been proved before him bonds secured by the lien of the mortgage mentioned in the pleadings, amounting to $50,000, with coupons on $15,000 of such bonds from April 1st, 1900, and with coupons on $35,000 thereof from October 1st, 1900, and also detached coupons due April 1st, 1900, amounting to $300; and it appearing that only the six bonds proved by O. K. Eldridge, with coupons maturing October 1st, 1900, are disputed as to ownership; and as to these bonds, after hearing the testimony offered and argument of counsel, it is hereby

adjudged, that the said O. K. Eldridge is the legal and *'bona fide'* owner and holder of the said bonds.

"And it further appearing from the report of the said special referee, that W. B. Fewell having on the 7th day of December, 1899, paid over to the Crescent Cotton Mills the sum of $5,000, with the understanding and agreement that he should receive therefor first mortgage coupon bonds of the said Crescent Cotton Mill, but which bonds were never delivered; and it further appearing that the whole amount of $50,000 of bonds issued by the said Crescent Cotton Mills are now held by other *'bona fide'* holders; it is ordered and adjudged, that the said W. B. Fewell is in equity entitled to receive any bonds or surplus of bonds which have been or may be released by the payment of the debts for which the same were pledged, to the aggregate par value of $5,000, and is entitled to be paid his *'pro rata'* on said bonds, if any, along with the other bondholders of the said Crescent Cotton Mills out of the proceeds of the property sold, under said mortgage, after the payment of the expenses as hereinafter provided; and it further appearing from the report of the said A. E. Smith, receiver, that there is now in the bank the sum of $33,752.77, with interest thereon at four and one-half per cent. from February 11th, 1901, applicable to the payment of the said bonds and coupons, after the payment of expenses, it is hereby ordered, adjudged and decreed, that the said receiver do at once draw out and retain from said sum so deposited an amount equal to three per cent. thereon for his commissions as receiver, and that he pay therefrom to James F. Hart, Esq., plaintiff's attorney, the sum of $840, being four-fifths of the fee of $1,050 allowed him under the order of this Court, dated April 17th, 1901; and that he pay therefrom to Jos. W. Barnwell, Esq., the sum of $100 in full of counsel fees and commissions of the Richmond Trust and Safe Deposit Company; and to W. W. Lewis, Esq., the sum of $20, being four-fifths of his fee of $25 allowed him as attorney for the Crescent Cotton Mills; and to W. Brown Wylie, Esq., the sum of $80, being four-fifths of his fee of

$100 hereby allowed him as special referee herein; and to F. P. McCain, Esq., the sum of $16, being four-fifths of his fee of $20 hereby allowed him as special referee in said cause; and to James F. Hart, Esq., the sum of $160, being four-fifths of the additional fee of $200 hereby allowed him as receiver's attorney, in addition to the sum of $150 already paid to him by the receiver, and that said receiver retain therefrom in his hands to the credit of the funds out of which it was paid, the sum of $1,031.35, being four-fifths of the sum of $1,289.19 paid out by the receiver, as his report shows, to wit: four-fifths of the following amounts: insurance, $98.44; watchman, October, November, December, $126; James F. Hart, attorney, $150; auctioneer, $7; advertising, $45; taxes, $862.

"That the receiver, after making said payments and after paying from said mortgage fund four-fifths of the costs of the officers of the Court, to be taxed by the clerk, do credit to each of the claimants proving said bonds his '*pro rata*,' to be based on the report of the referee as of April 1st, 1900, but under special agreement with the counsel of the said Charleston Savings Institution, he shall pay to the said institution or said counsel for them a sum not exceeding $14,042.06, and under special agreement with the counsel of the Hibernia Bank a sum not exceeding $2,744; and any difference between the '*pro rata*' share of the said institution and bank and said sum agreed to be received by them be applied by him to the claim of W. B. Fewell to an amount not exceeding a '*pro rata*' sum paid to the other bondholders on bonds to the amout of $5,000; and that said receiver do forthwith pay to said claimants or their counsel, their whole '*pro rata*' or distributive share of said mortgage fund, except as hereinbefore ordered, under special agreement with said Charleston Savings Institution and Hibernia Bank. And it is further ordered, that in case the said mortgage fund be not sufficient to discharge the claims of said bondholders in full, that said claims be paid their '*pro rata*' of any funds distributable among the general creditors, but the payments so made shall

not exceed the amounts proved against said mortgage fund, and in the case of the Charleston Savings Institution and Hibernia Bank, not more than the sum agreed to be received by them respectively.

"And it is further ordered and adjudged, that A. H. White do pay to said receiver the sum of $257.84, being one-fifth of said sum of $1,289.19, to be credited back to the fund out of which it was paid, and one-fifth of the costs of the officers of the Court, to be taxed by the clerk, and also the sum of $210, being one-fifth of the fee of $1,050 ordered to be paid to James F. Hart, plaintiff's attorney, under order of the Court, dated April 17th, 1901; the sum of $5, being one-fifth of the fee allowed W. W. Lewis, attorney for the Crescent Cotton Mills; the sum of $20, being one-fifth of the fee allowed W. Brown Wylie, special referee; the sum of $4, being one-fifth of the fee allowed F. P. McCain, special referee; the sum of $40, being one-fifth of the additional fee allowed James F. Hart, as attorney for the receiver; and also the sum of $273, as receiver's commissions on $9,100, proceeds of the sale of the machinery sold, and receipt the receiver for the remainder of said fund of $9,100 as a credit on his lien on said funds reported by the referee, and thereupon his bid for said machinery shall be deemed paid in full. And it is further ordered and adjudged, that out of any funds still remaining in his hands, after first retaining therefrom three per cent. for his commissions and a further sum of five per cent. thereof to be credited back as its part of the costs and expenses of these proceedings, to the funds applicable to the payment of the bonds and coupons, and to the machinery fund going to A. H. White, four-fifths to the former and one-fifth to the latter fund, said receiver shall pay to the National Bank of Rock Hill, S. C., the amount due on the note for $1,300, given by him to said bank for money borrowed under order of Court in this cause; and that the remainder thereof be distributed *'pro rata'* among the general creditors.    It is further ordered and adjudged, that the said receiver do proceed to collect from I. H. Cohen, trustee, purchaser of the Crescent

Cotton Mills, on his bond given said receiver, the sum of $63, paid by said receiver for a day and night watchman's services for the care of said property from December 31st, 1900.

"It is further ordered and adjudged, that the claims of A. H. White and others for $2,060.91, as reported by the special referee, W. Brown Wylie, Esq., is not a lien upon the proceeds of the sale of any of the property in the hands of said receiver."

From this decree, Commercial and Farmer's Bank, White, White & Hutchison, Holler, Richmond Trust and Safe Deposit Co., Hibernia Savings Bank, Charleston Savings Institution, Revel and Fewell, appeal.

*Messrs. Witherspoon & Spencers,* for C. & F. Bank, White, White & Hutchison and Holler, cite: *Mere possession of bonds, not sufficient to show title:* Dan. on Neg. Inst., secs. 769, 166, 165. *As regards consideration:* 39 A. D., 99, and notes; 28 S. C., 148; 1 Strob., 302. *One taking negotiable note as collateral is not protected against prior equities:* 36 A. D., 216, and notes; 37 A. D., 725; 44 A. D., 693, and notes; Dan. on Neg. Inst., secs. 795, 777. *Machinery fund should not have been required to pay any part of expenses:* 27 S. C., 271; 21 S. C., 181.

*Mr. Jos. W. Barnwell,* for Richmond Trust and Safe Deposit Co., Hibernia Savings Bank, Charleston Savings Institution and Revel, cites: *Bank should not be deprived of its interest from settlement of amount until payment:* Reid on Corp. Fin., sec. 496; 54 Fed. R., 518. *Fewell not entitled to bonds:* Reid on Corp. Fin., sec. 494; Pom. on Con., sec. 153.

*Messrs. Wm. J. Cherry* and *D. E. Finley,* for Fewell. The former cites: *Eldridge was bound to inquire into Kerr's title to the bonds, and he accepted them at his peril:* 3 Corp. Cas. (N. S.), 460; 120 N. Y., 145; 32 S. C., 238. *Fewell is equitable holder of bonds paid for:* 11 Ency., 2 ed., 180, 182,

.note 7; 47 S. C., 99; 2 DeS. Eq., 552; 2 Hill Ch., 167; 3 DeS. Eq., 74; 1 L. R. A., 301; 32 S. C., 355.

*Messrs. Wilson & Wilson,* for Eldridge and National Bank, contra, cite: *Eldridge is bona fide holder of the bonds, without notice of fraud or defect in title:* 4 Ency., 300, 318; 20 How., 343; 102 S. C., 14; 28 S. C., 143; 20 How., 343; 2 Wall., 110; 21 Wall., 354; 96 U. S., 51; 102 U. S., 14, 442; 8 S. C., 290; 14 S. C., 145; 12 S. C., 272. *Holder of note taken as collateral is protected:* 4 Ency., 290, 291, note; 102 U. S., 14; 100 U. S., 239; 11 Rich. L., 657; 26 S. C., 506. *Contract made by receiver under discretionary power will be protected:* 20 Ency., 157; 43 N. J., 669; 102 U. S., 1; 136 U. S., 89; 117 U. S., 434.

*Mr. Jas. F. Hart,* for receiver, contra.

June 19, 1902. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendant was chartered under the laws of this State, on the 11th day of August, 1899. It passed into the hands of a receiver, under an order made in this action because of insolvency, on the 4th day of September, 1900—aged one year and twenty-three days. In September, 1899, the defendant executed to the Richmond (Va.) Safe Deposit and Trust Company a mortgage covering all its real and personal property situated in the city of Rock Hill, S. C., which secured $50,000 of negotiable coupon bonds to be issued by said Crescent Cotton Mill. Of this $50,000 of negotiable bonds so issued, not a single bond was ever sold on the open market. On the contrary, every one of such bonds was hypothecated to secure loans; for instance, $18,000 of said bonds were hypothecated to the Charleston Savings Institution of Charleston, S. C., to secure a loan of $13,645; $6,000 to the Hibernia Savings Bank of Charleston, to secure a loan of $3,719.07; $10,000 to the plaintiff, to secure a loan of $7,500; $5,000 to the National Bank of Char- .

lotte, N. C., to secure a loan of $5,000; $6,000, to secure a
loan made by a Rock Hill bank; $5,000, to secure a debt for
machinery to the Saco Pettie Machine Co.    Nothing but the
exhaustion of the supply of the bonds prevented the president
and treasurer of the defendant cotton mill from hypothecat-
ing $9,000 of the bonds with one O. K. Eldridge, of New
York, to secure a loan to him; and turning over $5,000 to
Mr. W. B. Fewell, who paid for them in advance at par.
When the affairs of the Crescent Cotton Mills was being ex-
amined before Mr. W. Brown Wylie, as special referee, it
was ascertained that the books of the mill failed to state its
operations as to these bonds, as also the condition of sub-
scriptions to its capital stock.    Instead, therefore, of being
able to trace the history of the issue of the $50,000 of bonds
from the books of the mill to the holders thereof, this history
had to be traced from the holders back to the mill.    So much
by way of preface.    Under the action a receiver of the mill
was appointed and, as before remarked, Mr. W. Brown
Wylie was appointed special referee, and directed to adver-
tise for all creditors of the mill to present and prove their re-
spective demands before him.    Quite a number of claims
which were unsecured came before the special referee, but as
no assets could possibly be available for the payment of their
claims, no further attention will be paid to them.    The spe-
cial referee's report upon claims which had or claimed a
preference was made, and upon exceptions came on to be
heard before Judge Townsend.    His decree must be re-
ported.    Many appeals have been taken from this decree,
and it remains for this Court to dispose of the same.

*First.* The Hibernia Savings Bank claims that the Circuit
Judge inadvertently allowed too little interest on its claim.
As we understand the question of this alleged error, it is that
the Circuit Judge only allowed interest on its *pro rata* share
up to 1st April, 1901, whereas his decree was ren-
dered on 20th May, 1901, and the distribution was
not made until after 20th May, 1901—say until 1st
June, 1901.    This error should be corrected—especially as

this bank gave up a security which would and did largely yield more than enough to pay its full claim.    If the claim, with interest to 1st March, 1901, was $2,719.07, and 1st April, 1901—one month later—was $2,744.60, then by the same rule, on 1st June, 1901—two months later—it should be $2,795.66.    Let this appellant receive $2,795.66 instead of $2,744.60.

*Second.* It is contended that the claim of James F. Hart, as attorney for the receiver of the mill, as the balance of his fee (say $200), should not be charged as against the holders of bonds secured by mortgage, and also as against the fund received from A. H. White, as purchaser of the machinery sold separately by the receiver.    It is not denied that the sale was pushed forward by the attorney; that such attorney has represented said receiver in several important suits.    Such being the case, we will not interfere with the exercise of the discretion of the Circuit Judge involved in his allowance of these fees.    This Court admits that A. H. White has had a series of mishaps, which he has met like the man he has proved himself to be, but still it was *his contract* to protect the machinery company in its sales of machinery to the mill.

*Third.* It is contended that the other items embraced in the receiver's account should not be allowed; and if allowed at all, should not require of the holders of the negotiable bonds secured by the mortgage as well as A. H. White, as purchaser of the machinery, to pay 95 per cent. thereof, while the "general account" is only charged five per cent. thereof. Taxes paid by the receiver, amounting to some $850, were paid from the "general fund."    These taxes arose from property embraced in the mortgage and the separate machinery. The fees of the receiver arose from these sales.    The loss met by the receiver in running the mill for twenty-three days was from an honest effort to save the property harmless, as it is well known that intricate mill machinery is better protected from injury when in use than by allowing it to remain

idle.    Under all the circumstances, these exceptions must be overruled.

*Fourth.*  What is the status of the six bonds held by O. K. Eldridge?   The Circuit Judge decreed that Eldridge was the owner and entitled to set them up as valid claims under the mortgage.   This is a serious matter.   The facts are not very much complicated, but the deductions to be made from these facts is the serious question.   When R. Lee Kerr, as an individual, borrowed $15,000 from O. K. Eldridge, he pledged as collateral to secure that loan $5,000 of stock held by him (Kerr) in the Rock Hill Land and Investment Co., and also $10,000 of stock in the Commercial and Farmers Bank of Rock Hill, S. C.   The agreement between R. Lee Kerr and O. K. Eldridge is in writing, signed by both parties.   In such agreement no reference is made to the Crescent Mill, as to its proposed issue of $50,000 negotiable bonds by said mill.   No effort is made by Eldridge to obtain any of these bonds as collateral to his loan already made to Kerr until after it was discovered that the Commercial and Farmers Bank of Rock Hill, S. C., was insolvent, but that in the spring of the year 1900, the said Eldridge came to Rock Hill on two occasions, the last of which was in April, 1900, at which last visit he sought from R. Lee Kerr some of the bonds of the Crescent Cotton Mill Co.; he knew Kerr was president and treasurer of said mill, and on the 30th April, 1900, the said R. Lee Kerr turned over to the attorneys of the said Eldridge six negotiable bonds of said Crescent Mill Co., secured by a mortgage of its property, under the following circumstances, viz: On the 31st day of January, A. D. 1900, the Crescent Cotton Mill Co. made its note payable to the Commercial and Farmers Bank of Rock Hill, S. C., for the sum of $11,044, due and payable in ninety days after its date, and that to secure said note, the said maker assigned as collateral security for said note the certificate of deposit of $5,000 with said bank, and also six bonds of $1,000 each of the Crescent Cotton Mill Co., such bonds being numbered 45, 46, 47, 48, 49 and 50.   That

when said Commercial and Farmers Bank became insolvent and went into the hands of a receiver, on the 3d February, 1900, and D. Hutchison was appointed such receiver, he found the note of the Crescent Cotton Mill Co. for $11,044, together with the collaterals, to wit: the $5,000 certificate of deposit and the six bonds of the Crescent Cotton Mills Co., pinned to said note. That R. Lee Kerr was in the vault of the bank in April, 1900. That in May, 1900, the said D. Hutchison, as said receiver, failed to find said six bonds in the bank, and asked R. Lee Kerr if he knew what had become of them, to which inquiry R. Lee Kerr replied that he did not know, but that he thought they were mislaid. That circumstances pointed to their possession by O. K. Eldridge. When applied to, Mr. Eldridge promptly admitted that he held the bonds, having received them on the 30th April, 1900. R. Lee Kerr subsequently admitted that he had taken the six bonds in question from the vault of the Commercial and Farmers Bank, under what he called a claim of right. He claimed to own the bonds, and that he had merely loaned them to the Crescent Cotton Mill Co. to use as a pledge to the debt for the $11,044 debt, and as the debt was paid, he had taken them and turned them over to Mr. O. K. Eldridge as an additional security to his loan of $15,000. The receiver demanded the bonds of Eldridge. On examination there was no entry found upon the books of the Crescent Cotton Mill showing that R. Lee Kerr was the legal holder as an individual of said six bonds for $1,000 each, nor, for that matter, any other holder of bonds. We have heretofore stated that in the written agreement between Eldridge and Kerr as to the $15,000, there was no reference to bonds to or issued by the Crescent Cotton Mill Co.; but in a letter written on the 5th September, 1899, by R. Lee Kerr to Eldridge in regard to this loan, under a postscript and the letters *"K. C."* occur these words: "The bonds will be executed on the 15th inst., at which time they will be promptly forwarded." As to what bonds were referred to in this second postscript, to be issued on the 15th September, 1899, we are

left to conjecture. The safe inference would be that reference was intended to be made to the $50,000 negotiable bonds of the Crescent Cotton Mill Co., as they were issued about that date. And R. Lee Kerr testifies that he had promised verbally to O. K. Eldridge that he would issue to him $15,000 of these bonds as an additional security to the loan of $15,000. Subsequently, in a trial had between the Commercial and Farmers Bank and its receiver on the one side and the Crescent Cotton Mill Company and its receiver on the other side, it was judicially determined that the Crescent Cotton Mill Co. had paid its debt of $11,044 to the Commercial and Farmers Bank, *except the sum of $47*. This was the result by reason of the deposit check of $5,000 and the payment for the bank by the mill of two notes for $3,000 each, in the city of Charleston. It thus appears that the bank had no claim upon the six bonds of the mill, each bond for the sum of $1,000, except to secure the sum of $47. Practically, therefore, these six bonds were the property of either the Crescent Cotton Mill or of R. Lee Kerr. Both of these two parties claim the bonds. They were certainly used by R. Lee Kerr, although he obtained possession of them by underhand means, so far as the bank and mill were concerned. There can be no doubt that R. Lee Kerr exercised, until May, 1900, a very general control of the means of the Crescent Mill, and that his own means were used for the benefit of the mill. As an illustration of this, the $5,000 deposit check used as collateral to the note of the mill to the bank for $11,044, was the property of R. Lee Kerr, and this very collateral was subsequently held as part payment of such note. Then the mill was said to owe him, besides, over $1,000. It is greatly to be regretted that there was no system used in stating these accounts. We must take the record as we find it. Such was the Circuit Judge's condition when he passed upon these matters. We will have to modify the judgment of the Circuit Judge by requiring Mr. Eldridge to pay to the mill the sum of $47, which is to be paid by said mill to the receiver of the Commercial and Farmers Bank.

With this slight modification, we affirm the Circuit judgment in this particular.

*Fifth.* We will now consider the exception relating to the claim of W. B. Fewell. The testimony leaves no doubt that $5,000 of Mr. Fewell's money was paid into the hands of R. Lee Kerr, as treasurer of the Crescent Cotton Mill Co., upon an agreement that he was to receive $5,000 of the negotiable bonds of the said mill. He never received said bonds. He cannot now receive said bonds. The Circuit Judge ordered that Mr. Fewell should receive as an equity what was left after paying *pro rata* to the Hibernian Bank of its claim of the $5,000 of bonds held by said bank. We affirm the Circuit judgment in this matter, except as modified by the holding of this Court, whereby the claim of the Hibernian Bank was increased by us.

*Sixth.* We cannot disturb the Circuit judgment as to the lien on goods in process nor as to the repayment of the money borrowed to run the mill for twenty-three days. From the testimony, it appears that Mr. White and Mr. Hutchison were doing their best to save the property and keep it "a-going concern." It was their misfortune to be stockholders and officers in this factory. The receiver was appointed with their consent. The order of the Court directing the receiver to keep the mill running was made with their acquiescence. The National Bank of Rock Hill should receive its money. The holders of the bonds of the mill and also the assignee of the claims of the machinery company have already been made to stand back, so as to allow certain expenses to be paid from funds coming to such holders of preferred claims. We cannot add anything more to their burdens. These exceptions are overruled.

*Seventh.* If we have failed to enumerate any other exceptions, they must be considered as overruled.

It is the judgment of this Court, that the judgment of the Circuit Court, except in the two slight particulars stated in this opinion, is affirmed, and in those two particulars it is modified.